UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERESA R. TADDEO,

                                   Plaintiff,     DECISION and ORDER

-vs-

                                                       08-CV-6109-CJS

L.M. BERRY AND COMPANY,

                                   Defendant.

---

**APPEARANCES**

For Plaintiff:                    David Rothenberg, Esq.
                                    Elizabeth Reitkopp Young, Esq.
                                    Geiger and Rothenberg, LLP
                                    45 Exchange Street, Suite 800
                                    Rochester, NY 14614

For Defendant:                Kenneth B. Stark, Esq.
                                    Robert I. Koury, Esq.
                                    Littler Mendelson, PC
                                    1100 Superior Avenue, 20th Floor
                                    Cleveland, OH 44114

**INTRODUCTION**

    **Siragusa, J.** Now before the Court is Defendant's Motion for Summary Judgment, ECF No. 44, seeking to dismiss Plaintiff's employment discrimination claims in their entirety. Defendant argues that Plaintiff failed to make a *prima facie* showing of age and gender discrimination based on the termination of her employment. For the reasons that follow, Defendant's motion is granted and Plaintiff's claims are dismissed in their entirety.

**BACKGROUND**

    Unless otherwise noted, the following facts are taken from the Statement of Undisputed Material Facts of L.M. Berry and Company ("Defendant"), ECF No. 44-2.

In late February 2007, Defendant's Vice President of Human Resources ("HR") Anita Moore ("Moore"), became aware of potential misconduct in Berry's Rochester Office involving, among others, Teresa Taddeo ("Plaintiff"), Kevin Dowd ("Dowd"), and Chris Peer ("Peer"). Moore Aff. ¶3. Taddeo, Dowd, and Peer were alleged to have, among other things, disregarded a directive from their supervisor, Operations Sales Manager Gayle Jones ("Jones"), not to involve Berry employee Brian Sturm ("Sturm") in certain work projects, including a project called the "Rochester Southern 50% Review." NYDHR Verified Complaint ¶¶ 5-6 (attached as Ex. 1 to Affidavit of Robert Koury); Moore Dep. 88:7-25, 89:1-25, 90:1-10.

Moore, with assistance from HR Generalist Brent Kondritz ("Kondritz"), conducted a formal HR investigation into the alleged misconduct. Moore Aff. ¶4. Moore and Kondritz conducted lengthy, formal interviews of each Berry employee involved, including Taddeo, Dowd, Peer, and Administrative Assistant Sandy Houseknecht, and took detailed notes of the interviews. Moore Aff. ¶¶ 5-9, Exs. 1-4; Kondritz Aff.¶¶ 5-11, Exs. 1-8. Moore and Kondritz also conducted lengthy, formal interviews of Jones and Division Manager Kevin Dunston ("Dunston"), again taking detailed notes of the interviews. *Id.* During these interviews, Peer and Dowd each stated that Taddeo instigated the misconduct, *i.e.*, they each stated that Taddeo sought out Sturm's assistance on the Rochester Southern 50% Review and at some point told the others managers that Sturm was going to assist with the document. Kondritz Aff. Ex. 4 at 1 & Ex. 6 at 1. However, Plaintiff maintains that Dowd suggested that they check with Sturm. Taddeo Dep. 94. She also states that she had come to Dunston's office saying that she had heard Jones was mad at her and that he told

her that Jones would come talk to her. Dunston Dep. at 67. Peer further states that Taddeo called him at home on his cell phone and asked him to keep quiet about the misconduct. Kondritz Aff. Ex. 4 at 1. Dowd said he later called Taddeo to tell her to come clean about the entire incident, but she refused and told Dowd to lie to Jones about the misconduct. Kondritz Aff. Ex. 6 at 2, 6. Plaintiff contends that Dunston took Dowd out for drinks and counseled him on how to handle Jones' questioning. Dunston Dep. 69-71. She also states that Dowd told Peer not to do anything about coming forward and that Dowd would take care of the situation. Dunston Dep. 103.

Plaintiff denied that anyone ever approached her about coming clean, and denied telephone conversations with Dowd or Peer. Moore Aff. Ex. 2 at 3; Moore Dep. 133:1-14; Taddeo Dep. 172:11-12. Plaintiff also notes that when Dunston and Jones called HR, speaking with Kondritz, Dunston stated Plaintiff had been the ringleader of the January 30 incident and that he wanted her fired. Kondritz Dep. 67-68.

At the end of her investigation, Moore concluded that each manager had, to some extent, engaged in misconduct. Moore Dep. 100:16-25, 101:1-13, 103:3-25, 104:1-5. She concluded that each manager had purposefully disregarded a direct order from his supervisor. *Id*. Although Moore was extremely concerned about the allegations by Peer and Dowd that Taddeo asked them to lie and to cover-up the misconduct, Taddeo denied calls with Peer or Dowd and there was, at that point, no evidence to corroborate either story. *Id.* 100:16-25, 101:1-13; 137:10-21. As a result, Moore decided to give each manager a final written warning. *Id.* 101:1-25, 102:1-19; Taddeo Dep. 152:12-25, 153:1.

After being advised that he would receive a final written warning, Peer told Dunston that he had cell phone records proving that Taddeo had called him at home during the time she denied talking to him about the matter. Dunston Dep. 117:2-7. Peer gave Dunston a copy of the records. Dunston Dep. 119:24-25, 120:1-11. Dowd also gave Dunston a copy of his cell phone records. Dowd's cell phone records showed that he had in fact called Taddeo during the time she denied talking to him about the matter. Dunston Dep. 120:12-16. Specifically, the records revealed a four-minute call from Taddeo's cell phone to Peer's cell phone on the evening of February 5, 2007 and a six-minute call from Dowd's cell phone to Taddeo's cell phone the following morning. Moore Aff. Ex. 5 at 2, 3. Copies of the cell phone records were given to Moore, and she concluded they corroborated the stories of Peer and Dowd about their phone calls with Taddeo. Dunston Dep. 120:17-20; Moore Aff. ¶10. Although the records could not conclusively prove what was said during those calls, Moore found it significant that the calls were in fact made. Moore Dep. 133:1-14; 137:4-25, 138:1-12. Not only did Taddeo deny phone calls with Peer or Dowd relating to the investigation, she never acknowledged *any* phone calls with Peer or Dowd during the relevant time frame. Consequently, Moore believed that the records corroborated the stories of Peer and Dowd, and suggested that Taddeo had lied to her during the interview. Moore Dep. 144:4-12; Moore Aff. ¶ 10.

Given this new evidence, Moore re-opened the investigation to get further details about the calls and to give Taddeo an opportunity to explain the discrepancy between the records and her previous statements throughout the investigation. Moore Aff. ¶ 10. After telephonically interviewing Peer and Dowd to obtain details about the phone calls, Moore

telephonically interviewed Taddeo to give her one more chance to explain herself. Taddeo Dep. 157:13-20; 159:11-13; Moore Aff. ¶ 11, Exs. 6-9. Moore informed her that she had evidence that suggested Taddeo may have lied during the investigation. Taddeo Dep. 158:8-11. More specifically, Moore told Taddeo that she had otained records substantiating that calls between Taddeo and Peer and Taddeo and Dowd had been made. Taddeo Dep. 158:8-15. Taddeo, however, continued to deny the calls and failed to explain the discrepancy to Moore between the phone records and her earlier statements during the investigation. Moore Dep. 128:15-25, 129:1-25, 130:1-11; Taddeo Dep. 159:7-10, 162:8-18. As Moore put it during her deposition, Taddeo, "told me she called Sandy [Houseknecht]. That was the only one person that she acknowledge calling and I asked her if she called anyone else. She said no." Moore Dep. 133:11-14. At her deposition, Taddeo testified, "I told Anita Moore that the only person I called about the incident was Sandy [Houseknecht]." Taddeo Dep. 172:11-12.

During her deposition, Taddeo stated that her phone call on February 5, 2007, shortly after six o'clock, to Chris Peer was to tell him she was going to be in the hospital the next morning and would be late. Taddeo Dep. 163:15-19.

Nevertheless, Moore believed that Taddeo had intentionally lied about the calls with Peer and Dowd, and that she did, in fact, attempt to obstruct the investigation. Moore Dep. 140: 16-25, 141: 1-20. Consequently, Plaintiff was terminated effective March 19, 2007. Compl. ¶ 7. On March 10, 2008, Plaintiff filed the present action alleging: (1) age discrimination in violation of the ADEA and the New York Human Rights Law ("NYHRL"); and (2) gender discrimination in violation of Title VII and the NYHRL.

## STANDARDS OF LAW

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party ." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotations omitted). Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Moreover, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' " *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999) (citations omitted), abrogated on other grounds by *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006). With these general legal principles in mind, the Court will proceed to consider Plaintiff's claims.

Disparate treatment discrimination claims are analyzed using the well-settled McDonnell Douglas[1] burden-shifting framework:

> A plaintiff establishes a prima facie case of discrimination by showing that he or she (1) is a member of a protected [group] ....; (2) was qualified to perform the duties required by the position; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred in circumstances that gave rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).

*Bringley v. Potter*, No. 07-CV-6618 CJS, 2011 U.S. Dist LEXIS 133332, 39 (W.D.N.Y. Nov. 18, 2011).

Once the plaintiff presents a prima facie case[2], the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon the defendant's articulation of a legitimate,

---

[1]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[2]"A plaintiff's burden of establishing a prima facie case is *de minimis*. The requirement is neither onerous, nor intended to be rigid, mechanized or ritualistic." *Abdu–Brisson v. Delta Air Lines*, Inc., 239 F.3d at 467 (citations and internal quotation marks omitted).

non-discriminatory reason, the presumption of discrimination arising from the plaintiff's prima facie showing " 'drops out of the picture,' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); see *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Assuming that a plaintiff establishes a prima facie case, and that the defendant provides a non-discriminatory reason for the employment action, at the third tier of the *McDonnell Douglas* test, the plaintiff is required "to produce sufficient evidence to support a rational finding that the non-discriminatory business reasons proffered by the defendant for the challenged employment actions were false." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 470. If the plaintiff succeeds, such evidence may, or may not, establish the additional required proof of discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108–09, 147 L.Ed.2d 105 (2000)). "The relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id.* (internal quotation marks omitted).

## ANALYSIS

Defendant concedes Plaintiff satisfies the first three requirements to establish a *prima facie* case of discrimination. However, Defendant denies Plaintiff has met the fourth requirement. ECF No. 44 at 16. In that regard, Defendant argues that Plaintiff has failed to show that her termination occurred in circumstances that gave rise to an inference of discrimination. *Id.* The Court has reviewed the facts in the light most favorable to Plaintiff and granted all inferences in her favor. After review, the Court agrees with Defendant that Plaintiff failed to show that the circumstances of her termination gave rise to an inference of discrimination.

First as to her claim of age discrimination, the Court finds that Plaintiff has failed to provide any evidentiary proof that her age had any impact on her termination by Moore. Plaintiff's only proffered evidence is that another employee of Defendant, at one particular occurrence, mentioned hiring a younger employee who would work for less pay as a sales representative, not as a manager. ECF No. 49, 21. The Court finds Plaintiff fails to offer evidence of discriminatory intent based on her age for her termination; therefore, her age discrimination claim is dismissed.

Plaintiff also claims that she was terminated based on her gender. Again, the Court can find no evidence that Moore, who is also a woman,[3] terminated Plaintiff based on her

---

[3]The Court agrees with Defendant that the case law has held that any inference of discrimination is severely weakened when the decisionmaker is a member of the relevant protected class. *See Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *Smith-Barrett v. Potter*, 541 F.Supp.2d 535, n.4 (W.D.N.Y. March 31, 2008); *Mathews v. Atria Huntington*, 499 F.Supp.2d 258, 267 (E.D.N.Y. June 29, 2007).

gender. The Court is mindful that Plaintiff relies on the so called cat's paw theory[4] in arguing that Dunston's statements to Moore, that Plaintiff had been the ringleader of the January 30 incident and that he wanted her fired, Kondritz Dep. 67-68, had an effect that led to Plaintiff's termination. Certainly an employer cannot avoid liability when an investigator relies upon discriminatory testimony from a supervisor, which is a proximate cause of the employee being terminated. *See, e.g., Straub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) ("We...hold that if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." (footnote omitted)); *McKenna v. City of Philadephia*, 649 F.3d 171, 178 (3d Cir. 2011) (a decisionmaker's independent investigation is insufficient sufficient to negate the effect of a nondecisionmaker's discrimination). As the Supreme Court noted, however, the information relied upon by the decision maker under the cat's paw theory must still be given with discriminatory animus. In this case, Plaintiff has provided no proof that Dunston made his statements about Taddeo in order to have her terminated based on gender. The statements Plaintiff provides to support her claims are either conclusory or unsupportive of her argument. Her evidence fails to provide either concrete or even

---

[4]The term "cat's paw" generally refers to one used by another to accomplish his purposes. *See Nagle v. Marron*, 663 F.3d 100, 117 n.15 (2d Cir. 2008). The Second Circuit considered whether to apply the "cat's paw" theory to an employment discrimination case involving teacher tenure, recommended by a superintendent to an independent school board, and remanded the question of whether to adopt the approach to the district court for a decision in the first instance. *See Nagle*, 663 F.3d at 118. In a footnote, the Second Circuit panel in *Nagle* stated that the Supreme Court applied the cat's paw approach in a case involving the Uniformed Services Employment and Reemployment Rights Act. *Id.* at n.16.

circumstantial proof of discriminatory intent. Accordingly, viewing the evidence in the light most favorable to Plaintiff, she fails to make a prima facie showing of employment discrimination based upon her gender.

## CONCLUSION

For the reasons discussed above, Defendant's motion, ECF No. 44, is granted, and Plaintiff's complaint, ECF No. 1, is dismissed with prejudice.

IT IS SO ORDERED.

Dated: August 15, 2012
        Rochester, New York

                ENTER:

                                     /s/ Charles J. Siragusa
                                     CHARLES J. SIRAGUSA
                                     United States District Judge